IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DMP LIMITED PARTNERSHIP, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 08-429 |
| ) | |
| v. ) | Magistrate Judge Bissoon[1] |
| ) | |
| CARIBOU COFFEE COMPANY, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 25) will be denied.

The facts in this case are well known to the parties, and, given that the Court writes only for them, a detailed background section will not be presented.

In moving for summary judgment, Defendant argues that it owes no rent because the preconditions to payment, in Section 5(A)(i) of the parties' Lease agreement, were not met. *See* Def.'s Br. (Doc. 27) at 5-7. In relevant part, Section 5(A)(i) reads:

> Tenant's [*i.e.*, Defendant's] obligation to pay Minimum Monthly Rental shall commence on the date which is the earlier of[:]
>
> (x) . . . seventy-five (75) days after the date that the City of Pittsburgh issues the building permit for the Tenant's Work, . . . which Tenant's Work Plans are set forth generally on Exhibits A-2-l and A-2-2 . . . [and] further described on Exhibit C . . ., provided, however, that Tenant shall promptly after the execution of this Lease diligently proceed to prosecute to completion the

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case. *See* Consent forms (Docs. 11 & 12).

> Tenant's Demolition Work, that is part of its Tenant's Work
> Plans[,] and shall thereafter prepare plans and specifications for the
> build-out of the Tenant's Space Plans for the Premises that is part
> of its Tenant's Work, which time period for preparation of such
> specifications and plans shall not exceed six (6) weeks following
> the substantial completion of the Tenant's Demolition Work
> ("Six Week Period"), or
>
> (y) if Tenant shall fail to diligently proceed to prosecute to
> completion its Demolition Work or if Tenant shall fail to apply for
> its City Building Permit on or before the end of the Six Week
> Period, then . . . seventy-five (75) days after the date of the
> execution of this Lease . . ., or
>
> (z) the date Tenant opens for business in the Premises . . . .

Lease Agreement (filed under Doc. 28-2) at §§ 5(A)(i)(x)-(z).

The Lease was executed on February 10, 2005; Defendant submitted its plans and specifications to Plaintiff on June 15, 2005; and Defendant filed its permit application on June 22, 2005. *See* Def.'s Br. at 3, 7 (citing record evidence).

Defendant argues that the conditions of sub-Section (x) were not satisfied because, despite Defendant's having "[taken] the actions required of it," the City "did not grant [its] application for a building permit." *See id.* at 2. Relatedly, Defendant asserts that its plans, specifications, and permit application were timely because its "Demolition Work" included asbestos abatement completed on August 8, 2005. *Id.* at 7; *see also id.* (Defendant submitted plans and specifications on June 15, 2005, prior to commencement of Lease's "Six Week Period").

Plaintiff asserts that Defendant's Demolition Work did <u>not</u> include asbestos abatement, and it was completed on April 15, 2005. *See* Pl.'s Opp'n Br. (Doc. 31) at 5 (citing record evidence). Defendant did not submit its permit application until 68 days later, on June 22, 2005. *See id.* According to Plaintiff, sub-Section (y) controls, and Defendant's failure to apply for

a building permit before the expiration of the Six Week Period made rent due 75 days after the Lease was executed. *Id.*

The evidence, when read in a light most favorable to the non-moving party, supports Plaintiff's interpretation. Defendant began paying rent on May 1, 2005, *see* Pl.'s Facts (Doc. 30) at ¶ 91, less than one week after the 75-day, post-Lease-execution period referenced in sub-Section (y). *See* discussion *supra*. Defendant's commencement of rental payments on the first day of the month following the expiration of the 75-day period would appear a remarkable coincidence, indeed.

This aside, Defendant has failed to demonstrate that sub-Section (x) controls and that the conditions precedent to payment therein did not obtain. Defense counsel's theory would require the Court to conclude, as a matter of law, that asbestos abatement was necessarily included in Defendant's "Demolition Work." *See* Def.'s Br. at 6-7, 8-9. "Demolition Work" was defined as "Exhibit[] A-2-l" to the Lease, as "further described [in] Exhibit C." *See* discussion *supra*. Exhibit A-2-1 appears in the record as a largely illegible architectural drawing. *See* Doc. 28-2 at pg. 32 of 44. Assuming a more legible copy of Exhibit A-2-1 exists, Defendant has identified no specific reference to asbestos abatement therein; rather, Defendant essentially concedes its absence. *See generally* Def.'s Br. at 8 (Exhibit A-2-1 "does not show asbestos removal" because it "was drawn before [Defendant] was informed that the [p]remises included asbestos").[2]

Undeterred, Defendant takes the position that Exhibit C affirmatively established that "Demolition Work" included asbestos abatement. In relevant part, Exhibit C states:

---

[2] Material questions of fact remain regarding when Defendant learned that the premises contained asbestos. *Compare id. with* Pl.'s Resp. to Def.'s Facts (Doc. 30) at ¶ 15 (citing record evidence that Plaintiff "orally advised [Defendant] of the presence of asbestos before August 14, 2004").

> See Exhibits "A-2-1" (*i.e.*, "Tenant's Demolition Work") and "A-2-2" ("Tenants Space Plan of the Premises") for a general outline of Tenant's Work, which work shall be detailed in actual working plans and specifications containing greater detail.

*See id.* (filed under Doc. 28-2 at pg. 37 of 44).

According to Defendant, "Demolition Work" could include any type of work on the premises, based on the purported "catch all" provision in Exhibit C. Going one step further, Defendant asserts that "[n]othing in the Lease required [it] . . . to update its demolition plans for [Plaintiff]," a proposition that would appear to fly in the face of Exhibit C. *Compare* Def.'s Br. at 8 *with* discussion immediately *supra* (discussing "Tenant's Work, which work <u>shall be detailed</u> in <u>actual working plans and specifications containing greater detail</u>") (emphasis added).

In any event, Defendant's arguments fail in their central premise that the relevant Lease provisions are unambiguous, and therefore are subject to interpretation as a matter of law. *See* Def.'s Br. at 5. "A contract is ambiguous if it is reasonably susceptible [to] different constructions and capable of being understood in more than one sense." <u>Kripp v. Kripp</u>, 849 A.2d 1159, 1163 (Pa. 2004) (citation omitted). "Ambiguity in a contract can be either patent or latent. While a patent ambiguity appears on the face of the instrument, a latent ambiguity arises from extraneous or collateral facts which make the meaning of [the] written agreement uncertain although the language thereof, on its face, appears clear and unambiguous." <u>Bohler-Uddeholm Amer., Inc. v. Ellwood Group, Inc.</u>, 247 F.3d 79, 93 (3d Cir. 2001) (applying Pennsylvania law, citations and internal quotations omitted). Whether patent or latent, "ambiguous [contract provisions] are interpreted by the finder of fact." <u>Kripp</u> at 1163 (citation omitted); *accord* <u>Doman v. Brogan</u>, 592 A.2d 104, 110 (Pa. Super. 1991) (holding same) (citations omitted).

Regardless of whether asbestos abatement reveals a latent ambiguity (*i.e.*, an extraneous or collateral fact making the term "Demolition Work" uncertain, despite otherwise seemingly clear and unambiguous language) or a patent ambiguity (*i.e.*, "Demolition Work" is susceptible to more than one reasonable interpretation), the Lease provisions in question are not susceptible to interpretation as a matter of law.

Summary judgment also is inappropriate given Defendant's commencement of rental payments less than one week after the expiration of the 75-day period referenced in sub-Section (y). *See* discussion *supra*; *see also* Def.'s Facts (Doc. 26) at ¶ 41 (admitting that Defendant paid rent for more than two years). Although Defendant argues that its payments created neither a waiver nor estoppel of its rights under the Lease, *see* Def.'s Br. at 10-13, the undersigned need not address those issues to decide the current motion. Rather, the Court concludes that Plaintiff's evidence of rental payments would permit a jury to reasonably conclude that sub-Section (y) controlled.

Defendant next seeks summary judgment regarding accelerated rent, claiming that Plaintiff's Rule 30(b)(6) designee, Mary DeRubeis, has made "admissions" that the reasonable rental value of the Lease premises remains equal to or greater than the rent potentially owed by Defendant. *See* Def.'s Br. at 13-14; *see also* Lease at § 22(B)(iv) ("Landlord may accelerate all Minimum Monthly Rental and Additional Rent for the entire remainder of the Term, less the reasonable rental value"). As Plaintiff highlights, accelerated rent is only one form of damages requested. *See* Am. Compl. at ¶¶ 23-26 (seeking both past rent due and acceleration). Under the circumstances, Defendant's summary judgment Motion presents the type of piecemeal adjudication disfavored by federal courts. *See, e.g.*, <u>JDB Med., Inc. v. Sorin Group</u>, 2008 WL 791938, *2 (D. Colo. Mar. 20, 2008) (declining to decide motion for partial summary judgment

regarding damages because "[t]he piecemeal resolution of the issues raised" would "not simplify significantly or extenuate the evidence at trial") (citation omitted); *see also generally* Remediation Constructors, Inc. v. U.S., 68 Fed. Cl. 162, 166 (Fed. Cls. Ct. 2005) ("a piecemeal approach to [summary judgment often] is not an efficient use of judicial resources") (collecting cases).

Even were the Court to reach the merits, Defendant has failed to demonstrate that Ms. DeRubeis's statements constitute binding admissions. Ms. DeRubeis testified:

> Q. Do you have any sense of the fair market value of the [Lease] property?
>
> . . . .
>
> A. Vaguely.
>
> Q. [W]hy don't you tell me what you understand to be the fair market value . . . for this property?
>
> A. . . . I would consider it the rate willing to be paid for a space in a great location.
>
> Q. So there you are talking about leasing cost, right?
>
> A. Right.
>
> Q. What do you understand to be the fair market value for a lease for [the rental] property?
>
> A. Forty to sixty dollars a square foot.
>
> Q. Is that today?
>
> A. Yes.
>
> Q. Based on your information, has the fair market value for a lease for this property changed at all in the last five or six years . . . ?
>
> A. I'm not a realtor. I believe it[ is] the only space left on Walnut Street[,] so I would say that the rate is still constant.

>. . . .
>
>Q.      Is that based on conversations that you have had with realtors?
>
>A.      No.
>
>Q.      What[ is] it based on?
>
>A.      My opinion.

Dep. Tr. of M. DeRubeis (filed under Doc. 28-9) at 47-48.

If Ms. DeRubeis's qualified statements of personal opinion constitute "admissions" that bind Plaintiff as a matter of law, such a rule surely would prove problematic for litigants and the bar at large.  Unsurprisingly, the law does not support Defendant's position.  *See* <u>Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC</u>, 477 F.3d 383, 394 (6th Cir. 2007) (courts "are reluctant to treat statements [of] opinion . . . as binding judicial admissions," because "judicial admissions . . . typically concern only matters of fact") (citations, internal quotations and alterations omitted); 3 Handbook of Fed'l Evid. § 801:26 (6th ed. 2008) ("[a]n admission is limited to matters of fact which would otherwise require evidentiary proof, and cannot be based upon personal opinion or legal theory") (citation to quoted source omitted); *see also* <u>Thornton v. Federal Deposit Ins. Corp.</u>, 2007 WL 391571, *1 (S.D. W. Va. Feb. 1, 2007) ("[w]hen the [c]ourt indicates that the Rule 30(b)(6) designee gives a statement or opinion binding on the corporation, this does not mean that said statement is tantamount to a judicial admission"; "[r]ather, just as in the deposition of individuals, it is only a statement of the corporate person which . . . may be explained and explored") (citation to quoted source omitted).

Plaintiff has placed into the record an expert opinion regarding the reasonable rental value of the premises. *See* "Rent Survey Analysis" (filed under Doc. 30-10). It is for the jury to determine the appropriate weight of the evidence, and Defendant is not entitled to summary judgment regarding rent acceleration.

Finally, Defendant argues that Plaintiff has failed as a matter of law to mitigate damages, claiming that Plaintiff did not respond to Defendant's request to sublet the Lease premises to "Sognature, Ltd." *See* Def.'s Br. at 16 (Plaintiff's failure to mitigate "is conclusively established" by Plaintiff's lack of response regarding Sognature). Plaintiff, on the other hand, has introduced evidence indicating that it did make efforts to mitigate, and that it forwarded sublet inquiries to Defendant. *See generally* Pl.'s Opp'n Br. at 18-21 (citing record evidence).

In the undersigned's view, Defendant's entitlement to summary judgment cannot properly turn upon Plaintiff's purported unresponsiveness to a single sublet opportunity. Rather, the duty to mitigate is a jury question, "determined [based on] all the facts and circumstances" in the case. Toyota Indus. Trucks U.S.A., Inc. v. Citizens Nat'l Bank of Evans City, 611 F.2d 465, 471 (3d Cir. 1979) (applying Pennsylvania law, citation to quoted source omitted). Plaintiff also has presented evidence that Defendant was uncooperative regarding potential sublet opportunities, *see* Pl.'s Opp'n Br. at 21, and Plaintiff's duty of mitigation is informed by Defendant's obligations regarding the same. *See generally id.* ("where both the plaintiff and the defendant have had equal opportunity to reduce the damages by the same act," "it is equally reasonable to expect a defendant to minimize damages") (citation to quoted source omitted).

Defendant's mitigation arguments cannot be resolved on summary judgment.

## II.  ORDER

For all of the reasons stated in the above Memorandum, Defendant's Motion for Summary Judgment (**Doc. 25**) is **DENIED**.

IT IS SO ORDERED.


August 26, 2009                                    s/Cathy Bissoon
                                                   Cathy Bissoon
                                                   United States Magistrate Judge

cc (via email):

All Counsel of Record